## HILLARY JOHNSON v. JOSHUA CHASE.

**Judgment Based on Erroneous Commissioner's Report—Failure to Except—Partnership.**

> The Court of Appeals never stops to inquire whether there are exceptions to a master commissioner's report or not. If it is erroneous, and a judgment is based on it, and such judgment is appealed from, it is the duty of the Court of Appeals to examine and reverse erroneous judgments.

### APPEAL FROM HART CIRCUIT COURT.

#### October 23, 1871.

OPINION BY JUDGE PETERS:

In March, 1865, this suit was brought by appellant against appellee to settle the accounts of a partnership which they had entered into to carry on the business of selling dry goods in a village in Hart county in August or September, 1858, the terms of which were reduced to writing on the 27th of September of said year, several weeks after they had commenced the business, as is recited in the writing. It contains no statement of the amount of capital to be advanced by the partners, or each of them. Nor does it show that either of them had advanced any capital in the adventure.

On the 6th of November, 1859, they agreed to dissolve the partnership to take effect on the 10th of March following. That agreement was also reduced to writing and it shows that they agreed that appellee had shortly before that time paid in Louisville, debts of the firm to the amount of $2,058.66, and that appellant bound himself to pay the same amount on debts of the firm then owing in said city.

On the 12th of July, 1865, appellee filed an elaborate answer, having gotten the time extended from April to that time to file the same. In that answer he avers that when he has the time to do so he will file all the books and papers in his possession pertaining to the business, and will also present a full statement of all the assets and liabilities of the firm with a list of balances, showing that appellant was in his debt, as he claims, in a considerable amount.

On the day after this answer was filed the case was referred to the master to state and settle the partnership accounts and report the result of his investigations to court.

In May, 1869, the master reported a balance due from appellant to appellee of $1,530.49 in cluding interest on a part of the indebtedness. In November thereafter the court below confirmed this report and rendered judgment in favor of appellee against appellant for the precise amount reported to be due to appellee, with interest from the date of the judgment, and the costs of said litigation, and appellant, complaining of that judgment, now seeks its reversal.

The master in his report states that "by reference to the bill rendered of merchandise bought by the firm of Chase and Johnson during the continuance of the partnership filed in this action, and entered in a paper filed herewith as a part of this report, the *total* amount of merchandise bought by the firm of Chase and Johnson during the continuance of the partnership as shown by said bill amounted to the sum of $10,467.48."

The commissioner further reports that the total "amount of merchandise sold by said Chase and Johnson (excluding the sale made to Johnson and Chase 21st of March, 1860, for which he executed three notes of that date amounting in the aggregate to the sum of $1,423.53 and amount of invoice $37.53), amounts to the sum of $11,700.00, as shown by addition of the day book of said firm, in which all entries of merchandise sold appear to be entered, excluding also the store house built by said firm, which .cost, as shown by said books, the sum of $815. 98, which was sold to said Chase and for which he executed his note November 20, 1860."

The commissioner further reports that from the books of said firm of Chase and Johnson, during its continuance, it received cash amounting to the sum of $10,255.59, as shown by paper filed with said (report marked "Cash Account") of Chase and Johnson, said sum of $10,255.59 is to be deducted from the amount of merchandise sold, it is shown that the amount paid out by said firm is $9,743.72 (see paper filed marked cash account of Chase and Johnson; also see receipts filed from 1 to 337, inclusive).

He further states that of the $11,700.00, the amount for which the goods sold, the sum of $815.98, the price of the house, $1,423.53, the price of the goods on hand when the dissolution took place, and $37.53, the amount of goods omitted, are to be added, making the total sum of $1,977.04, from which is to be deducted $1,454.85, this amount of insolvent debts sold by order of court and to the sum left after making that deduction is to be added the sum of $165.50, the price for which the insolvent debts sold, leaving the balance of $12,687.69.

The commissioner reports that the books show that there was paid by the firm during its continuance for merchandise purchases, $9,743.69, which will leave the "apparent" net profit, as the commissioner expresses it, of $2,943.97, but from this is to be deducted $200 for keeping horses; $65.00, the amount of S. H. Thurman's debt due the firm and sold to S. H. Johnson; also $25 boot in exchange of horse for mare; also $25 loss on moving lumber, which the commissioner reports, will reduce the apparent net profits to the sum of $2,528.97, which he charges to Chase for the purposes of the settlement.

The commissioner has evidently made a mistake in his addition and subtractions here, for the $200 for keeping horses; $65 for Thurman debt; the $25 for boot between horse and mare, and $25 loss on lumber when added make the sum of $315, which, taken from $2,943.97, will leave a balance of $2,628.97 instead of $2,528.97 as reported by the master to be charged to Chase.

But if it is stated in the report that the total cost of all the goods bought is just $10,467.48, and that the firm paid for goods bought of its own effects the sum of $9,743.69, which would leave the firm in debt only $723.79, and to pay that the report shows a profit of $2,528.97. But by the articles of dissolution it is agreed that Chase has paid out of his individual funds on the debts of the firm $2,058.53 and that Johnson must pay a like sum on debts outstanding. Where these debts are, if the commissioner reports correctly, cannot be found, for if he is correct in his estimates, the two sums the partners have paid with what he reports Johnson must yet pay, will amount to $3,393.27, more than the debts of the firm, and have the profits untouched, which presents a most extraordinary result.

But Chase, in his answer, states that appellant, of the $2,058.63 which he, by the articles of dissolution undertook to pay, had paid $1,021.94 as shown on day book 13, p. 139, and the sum of $77.38 as shown on page 154 same book, while in his report the master credits appellant only for the $1,021.94 and wholly omits to credit him with the $77.38, which is an error prejudicial to appellant.

Appellee is credited by $500 for services rendered the firm with interest, and that forms a part of the judgment against appellant. By the terms of the dissolution he was to be allowed at the rate of $400 per annum for his services where no one was assisting him in the business.

The firm commenced business, say about 1st of September, 1858, and dissolved 10th of March, 1860, making its continuance one year, six months and ten days. Shipps proves he was engaged as a clerk in the store when they commenced business and continued with them about three months then; that he was employed a second time and remained about four months, and a third time for thirty days, so that the whole time he was employed would equal eight months, leaving only ten months and ten days for which appellant should be paid at the rate of $400 per year, making less than $400 instead of $500, which was erroneously allowed.

The allowance of $200 for keeping two horses seems to be unreasonable from the proof, from which it appears the horses were sold in June or July, 1859, in less than one year after the firm commenced business, and it is not shown when the horses were taken to be kept. This allowance is based on the following question and answer of Shipp:

From what you know of the keeping of those horses, and of the provender bought for their use and their showing, what would you estimate the cost of keeping them from September, 1858, to the latter part of the summer, 1860? He answers: I would think it would cost near two hundred dollars—when he had before stated one had been sold in June, 1859, and the other perhaps last of July, 1859; but appellant is charged for keeping horses for about one year after they were sold and for about six months after the partnership was dissolved; nor does it

appear from the report what became of the mare which was partnership property or that appellant ever got anything for her.

This court never stops to inquire whether there are exceptions to a master's report or not. If it is erroneous and a judgment is based on it and such judgment is appealed from, it is the duty of this court to examine and reverse erroneous judgments.

For the errors pointed out the judgment is reversed and the cause is remanded with direction to recommit the case to the master to ascertain and report whether the partners or either of them advanced any capital to said firm when it commenced business or during its continuance, and if so, how much each advanced; how much each drew out; the amount of goods purchased with the dates of each purchase; how much was paid for them out of the firm's assets and how much by individual assets; when the various payments were made; and all other matters necessary to a correct settlement of the partnership business.

*W. B. Read, for appellant.*

*Barnett & Edwards, Howell, for appellee.*